This action was brought for the recovery of damages for an injury to Aleace Marsh, alleged to have been caused by the negligence of the defendant in an automobile collision in the city of Greensboro.
Prior to the trial a judgment of voluntary nonsuit was taken as to W. O. Buie.
After proper identification and verification, the plaintiff introduced an ordinance of the city of Greensboro, with special attention to Article 6, section 4, subdivision B, which reads as follows:
"A vehicle traveling on any street hereinafter enumerated shall be brought to a complete stop before entering or crossing the intersection thereof with any street as hereafter listed, to wit (b) Arlington Street, at the intersection with East Lee Street." *Page 670 
The collision occurred at the intersection of Arlington and East Lee streets. Aleace Marsh, the plaintiff, testified that she was now twenty-one years old but was a minor when the case was first started; that she employed the defendant Byrd, who operates the Daniel Taxi Service Company, to take her home. At the time of the collision the taxicab was traveling south on Arlington Street and on the right-hand side. The cars collided on the right-hand side of Arlington Street, not quite half-way across its intersection with East Lee Street. At the time of entering the intersection the Byrd car was traveling about thirty miles an hour. When the cars collided the right side of the taxi was struck by Sidney Herbin, who was operating the other car, traveling east along Lee Street. It knocked plaintiff up against the inside of the car and her chin was severely cut and her ear also. Plaintiff testified that she was awfully sore; that her clothing was soaked with blood; that she did not know who took her to the hospital. There she was treated, and later, when her ear started bleeding again, Dr. Smith fixed it. She paid the taxi driver twenty-five cents for her fare.
She further testified that the driver of the taxi did not slow up when he entered the intersection. The Herbin car struck the side of Byrd's car, near the back, where plaintiff was sitting.
F. B. Money, a traffic officer of the city, testified that on the occasion of the wreck he was called to the intersection of Arlington and East Lee streets to investigate the same, and found the defendant Byrd there when he arrived about ten o'clock in the day. He then described the position of the wrecked cars in the intersection. The Byrd car was headed south, slightly east at this point, and the Buie, or Herbin, car was headed northeast. The Byrd car was in the southeast corner of the intersection. The Buie car was damaged on the front mostly to the right. The width of the street traveling east on East Lee Street is 30 feet, and after crossing Arlington Street it narrows to 27 feet. Arlington Street is 30 feet all the way through. There were signs at the intersection; there was a danger reflector, red, marked "Danger," on Arlington Street before entering Lee Street. The sign is four feet high. There is a large brick house on the southeast corner, and a two-story frame house on the southwest corner, and a two-story frame house on the northwest. On the northeast there is a one-story frame house. There is also a sign painted on Arlington Street. The sign is "STOP" and is approximately 4 feet across the body of the letters, and is about 7 feet high. It is put down in white letters on the pavement, about 15 feet back from the curb. The danger sign already referred to is on the right-hand side of the street; it is a red reflector with letters written over the top, "Danger." It is about 22 to 24 inches long, and is erected on a concrete base approximately 3 to 4 feet high. It is just over the curb *Page 671 
and sidewalk and is about 8 feet from the north curb line of Lee Street. The reflector points north on Arlington Street, so that you would face it if you were traveling south on Arlington Street. As you approach this intersection you have to get as close as 8 feet from the curb line in order to see 200 feet up Lee Street. The intersection was obstructed on either side, so that you could not see 200 feet down Lee Street until you were 8 feet from the intersection going south on Arlington.
There was evidence with regard to the nature and extent of plaintiff's injury and as to other features of the case.
At the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit, which was allowed, and plaintiff appealed.
The evidence taken in its most favorable light to the plaintiff —Smith v. Sink, 211 N.C. 725, 192 S.E. 108; Woods v. Freeman, 213 N.C. 314
— discloses that the defendant, carrying plaintiff as a passenger for hire in a taxicab, drove southward out of Arlington Street at its intersection with East Lee Street at thirty miles an hour, disregarding the danger signs placed at the intersection of the streets, including the "STOP" sign written across Arlington Street in letters four feet across and seven feet high and a reflector sign three or four feet high to the right of the street with the word "DANGER" appearing thereon. The view to the right, as well as in other directions on Lee Street, was partially obscured by the buildings around the intersection and the building on the corner of the street to the driver's right. The taxicab was struck by a car coming from the driver's right, headed northeast. The driver ignored an ordinance of the city of Greensboro, which we think was enacted under a valid power, requiring a vehicle traveling on Arlington Street to be brought to a complete stop before crossing the intersection with East Lee Street.
Violation of this town ordinance, enacted for the safe use of the streets, is evidence of negligence. Sebastian v. Motor Lines, 213 N.C. 773. This evidence, with that relating to proximate cause, was for the jury. Other evidence, which we do not consider it necessary to discuss formally, was sufficient to carry the case to the jury.
The judgment of nonsuit is
Reversed. *Page 672